IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RENAE FORD,

    Plaintiff,

    v.

THE LAW OFFICE OF TANYA
MITCHELL GRAHAM, P.C.,

    Defendant.

CIVIL ACTION NO.
1:17-CV-04063-LMM

## ORDER

This case comes before the Court on Plaintiff's Motion for Attorney's Fees [34]. After due consideration, the Court enters the following Order:

## I.   BACKGROUND

Plaintiff initiated this action against Defendant on October 16, 2017, asserting claims of unpaid overtime and forced resignation under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Dkt. No. [1] at 1–3. Plaintiff worked for Defendant law firm as a paralegal for approximately eighteen months. Id. at 3. On Wednesday, August 30, 2017, she submitted a letter of resignation to Tanya Mitchell, stating her last day would be Thursday, September 7, 2017. Dkt. No. [36], Ex. 1. Plaintiff explained that she "decided to join [her] retired grandparents and relocate to Florida." Id. She also expressed gratitude for the opportunity to have worked for Defendant. Id. Two days later, in the early

morning of September 1, 2017, she texted her supervisor to alert her of a family emergency and to tell her she would not be coming to work that day. Dkt. No. [36], Ex. 2. Plaintiff did not return to work after that day. Dkt. No. [36] at 2.

On October 3, 2017, Plaintiff's attorney sent a demand letter to Defendant, asserting violations of the overtime provisions and forced resignation under the FLSA. Dkt. No. [36], Ex. 3. Plaintiff demanded $196.50 for the overtime claims and $1,440 for back pay, attributable to the week of missed work after the forced resignation. Plaintiff also demanded $5,525 in attorney's fees. Id.

Defendant initially counter-offered $71.55 to settle the matter for the portion of overtime pay Defendant believed was owed to Plaintiff. See Dkt. No. [36], Ex. 4. After judge-ordered mediation, the parties reached a settlement in which Plaintiff recovered $393 for her overtime pay claim plus liquidated damages and $720 for the forced resignation claim, which constituted 100 percent recovery for the overtime claim and 50 percent recovery for the forced resignation claim. Dkt. No. [37-1] at 7. The parties did not, however, resolve the issue of attorney's fees. Dkt. No. [32] at 1.

## II.    LEGAL STANDARD

Section 216(b) of the FLSA "makes fee awards mandatory for prevailing plaintiffs." Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542-43 (11th Cir. 1985). A prevailing plaintiff includes one who "obtained either a judgment on the merits or reached a settlement agreement." Goss v. Killian Oaks House of Learning, 248 F. Supp. 2d 1162, 1167 (S.D. Fla. 2003); see also Buckhannon Bd. &

Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 604 (2001) (settlement agreements enforced through consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees).

What constitutes a reasonable fee pursuant to section 216(b) is left to the Court's discretion. Kreager, 775 F.2d at 1543. Attorneys' fees are typically calculated based on the "lodestar" method, wherein the Court considers the reasonable number of hours expended multiplied by the reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This method provides a "starting point" from which the Court may adjust based on such factors as it deems appropriate. Goss, 248 F. Supp. 2d at 1167. In assessing reasonableness of the lodestar, courts consider the "twelve factors derived from the ABA Code of Professional Responsibility DR 2-106 (1980) and adopted in Johnson v. Georgia Highway Express[, 488 F.2d 714, 717–19 (5th Cir. 1974)]." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

Kreager, 775 F.2d at 1543 n.2 (citing Johnson, 488 F.2d at 717–19).

In FLSA matters, "it is not uncommon for fee awards to exceed the [p]laintiff's recovery in order to ensure that individuals with relatively small claims can obtain representation necessary to enforce their rights." Brandt v. Magnificent Quality Florals Corp., No. 07-20129-CIV, 2011 WL 4625379, at *12 (S.D. Fla. Sep. 30, 2011). When the prevailing party only partially succeeds on its claims or litigates in bad faith, however, the Court may reduce the "compensable hours and the hourly rate." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350–51 (11th Cir. 2008); Goss, 248 F. Supp. 2d at 1168.

## III.   DISCUSSION

In response to Plaintiff's motion for attorney's fees, Defendant asserts the total requested award of $42,500.00 should be reduced for two reasons. First, Defendant contends that Plaintiff's attorney, Arnold Lizana, based his fee calculation on an unreasonably high rate. Dkt. No. [36] at 10–11. Second, Defendant argues that Mr. Lizana billed an unreasonably high number of hours. Id. at 6–10. In making the second argument, Defendant not only objects to specific items in Mr. Lizana's application for attorney's fees but also argues Mr. Lizana unreasonably increased the total hours billed by pursuing the forced resignation claim in bad faith and padding his initial attorney's fee demand, thus unduly prolonging litigation. Id. at 6–11. Therefore, Defendant asserts "the time sought for recovery should be at least halved." Id. at 9.

### A. Reasonable Hourly Rate

First, Defendant asserts that Mr. Lizana's hourly rate was unreasonable. The Court finds, however, that the hourly rate of $400.00 charged by Mr. Lizana is reasonable.

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. Establishing a claimed market rate is the plaintiff's burden." Dillard v. City of Greensboro, 213 F.3d 1347, 1354 (11th Cir. 2000) (internal quotations and citations omitted). What a plaintiff's attorney actually charges clients "is powerful, and perhaps the best, evidence of his market rate[.]" Id.

Mr. Lizana has sworn in his affidavit that he regularly charges his clients $425.00 per hour. Dkt. No. [37-1] at 10. Additionally, in Atlanta, there is substantial support for a finding that the prevailing market rate supports $400 per hour for an experienced attorney. Thomas v. Grease Guard, LLC, No. 1:14-CV-619-MHC, 2018 WL 1137183, at *2 (N.D. Ga. Jan 5, 2018) (finding reasonable hourly rate for a partner at $400.00 per hour); see also Eason v. Bridgewater & Assocs., Inc., 108 F. Supp. 3d 1358, 1364 (N.D. Ga. 2015) (determining a reasonable hourly rate of $400.00 per hour for an attorney with 12 years of experience in FLSA and other employment matters). Mr. Lizana has 18 years of experience in employment-related cases. Dkt. No. [37-1] at 11. Defendant disputes the relevance of the experience because Mr. Lizana's experience relates

mostly to general employment cases with the Equal Employment Opportunity Commission ("EEOC") and seemingly includes only one FLSA case. Dkt. No. [36] at 10. Mr. Lizana has sworn in his affidavit that he has additional experience as a trial attorney at the EEOC for ten years and as an adjunct professor of employment law. Dkt. No. [37-1] at 2-3. Given this evidence and the Court's own experience, it finds that Plaintiff has met her burden of showing $400 as a reasonable hourly rate for her counsel.

### B. Hours Reasonably Expended

Defendant also asserts that the number of hours expended, 111.25, was unreasonable based on two specific objections to items in Mr. Lizana's application for attorney's fees and because Plaintiff pursued litigation in bad faith. Dkt. No. [36] at 8–9.

In its calculation of the initial lodestar, the Court should exclude any hours not "reasonably expended." Hensley, 461 U.S. at 434. Hours which are "excessive, redundant, or otherwise unnecessary" are not reasonably expended. Id. Although the plaintiff's attorney has the initial burden to establish and document her hours, the defendant must make "reasonably precise" objections to exclude hours from the award. Yule v. Jones, 766 F. Supp. 2d 1333, 1341 (N.D. Ga. 2010). After calculating the lodestar, the Court should also evaluate the "results obtained[,]" with a focus on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 434-35. While it is true that a simple "mathematical approach comparing the

6

total number of issues in the case with those prevailed upon" is impermissible, id., 461 U.S. at 435 n.11, "comparing the number of successful claims to the number of claims brought . . . is germane to determining the degree of plaintiff's success[.]" Popham v. City of Kennesaw, 820 F.2d 1570, 1579 (11th Cir. 1987).

Even for plaintiffs who prevail on their claims, an entitlement to attorney's fees under the FLSA "cannot be a *carte blanche* license for [p]laintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction." Goss, 248 F. Supp. 2d at 1168. Nuisance settlements, those "made solely in an effort to avoid the expense of litigation[,]" might evidence bad faith. See id. at 1168–69 (denying an award of attorneys' fees for a prevailing plaintiff who received "meager" damages and whose attorney consistently failed to respond to the defendant's attempt to negotiate). Bad faith may also occur when either party "delay[s] or disrupt[s] litigation" or "knowingly or recklessly raises a frivolous argument." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).

Ultimately, the determination of reasonable hours expended rests within the Court's discretion. Norman, 836 F.2d at 1301. Upon finding the claimed number of hours unreasonably high, the Court may either conduct "an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins, 548 F.3d at 1350.

### i. Defendant's Specific Objections to Hours Expended

Mr. Lizana documented and requested compensation for 111.25 hours in this matter. Dkt. No. [34] at 2. Defendant only specifically challenges two billing

7

entries—the 6.5 hours spent on the demand letter and the 8.5 hours spent in conducting discovery. Dkt. No. [36] at 8–9. Defendant asserts that "6.5 hours is excessive for writing that 2 ½ page letter." Id. at 8. Defendant also contends the hours Plaintiff's counsel spent conducting discovery after the court-ordered mediation had been scheduled were an unreasonable attempt to increase his fees. Id. at 9.

The Court finds these specific objections unpersuasive. First, 6.5 hours drafting a demand letter can be reasonable considering the research, revising, and editing needed. This is particularly true in this case given that the unpaid overtime hours spanned approximately eighteen months of work, requiring thorough and time-consuming review. Second, Mr. Lizana had a duty to diligently conduct discovery and reasonably conducted only the preliminary aspects of discovery—notices of depositions, interrogatories, and requests for admissions—in the two months between the Court ordering mediation and the date set for the mediation to take place. Either party was free to request a stay of discovery to avoid accrual of attorneys' fees during this period.

### ii. Defendant's Bad Faith Objections to Hours Expended

Defendant asserts two grounds for its argument that Plaintiff prolonged the litigation through bad faith conduct. First, Defendant contends Plaintiff "padded attorney fees" in the initial demand letter. Dkt. No. [36] at 8. Defendant argues that Plaintiff's demand of $5,525 in attorney's fees contributed to the delay in litigation by making "resolution difficult [if] not impossible." Id. at 7.

Defendant also asserts that this demand displays bad faith because Mr. Lizana's actual billed hours at the time the letter was sent only amounted to $3,300. Id. at 8. However, the Court finds that "as an initial demand the figure was not so outlandish or unreasonable as to raise an inference of bad faith, nor would it have precluded [Defendant] from making a reasonable offer to settle the matter at that time." Lee v. Krystal Co., 918 F. Supp. 2d 1261, 1273 n.16 (S.D. Ala. 2013). Although Plaintiff's counsel sought fees that moderately exceeded those actually accrued at that time, the padded demand alone cannot establish bad faith justifying a reduction of the lodestar when Defendant's initial counteroffer was only $71.55 and included no attorney's fees whatsoever. Dkt. No. [36] at 5. In other words, both parties contributed to the unnecessarily prolonged litigation.

Second, Defendant asserts that Plaintiff brought the forced resignation claim in bad faith because Plaintiff voluntarily resigned, expressing gratitude for her position with Defendant and citing the desire to be near her grandparents as the reason for her resignation. Dkt. [36] at 16. Defendant contends bringing this claim in bad faith unnecessarily prolonged litigation. Id. at 6-7. The Court finds some merit in this argument. Plaintiff's briefing fails to argue a legitimate factual basis for the forced resignation claim, and the record reflects none. However, the Court must also treat Plaintiff as the prevailing party on both claims. Per the terms of the settlement agreement, Plaintiff recovered 100 percent of the unpaid overtime claim plus liquidated damages and 50 percent of damages demanded for the forced resignation claim. Dkt. No. [37-1] at 7.

9

Nonetheless, the lack of evidence in the briefing and the differentiation in the results obtained suggests the forced resignation claim was less meritorious than the unpaid overtime claim, even if not wholly frivolous. Thus, Plaintiff's assertion of a claim without factual support contributed to the overall delay in reaching a settlement and increased her attorney's fees, even though Defendant likewise contributed to the delay. Moreover, the forced resignation claim's lack of success compared to the unpaid overtime—50 percent recovery versus 100 percent—demonstrates that some of Mr. Lizana's billed hours were spent on a partially unsuccessful claim. Mr. Lizana, however, did not differentiate in his fee application between the time spent on the unpaid overtime matter versus the forced resignation matter. See generally Dkt. No. [34-1]. The application also does not provide enough specificity to conduct a line-by-line analysis. Taking all of these considerations into account, the Court finds it appropriate to make an across-the-board **25%** cut of Plaintiff's claimed attorney's fees.

## IV.   CONCLUSION

Upon careful review of the record and due consideration, the Court finds that an across-the-board cut of Plaintiff's claimed attorney's fees by **25%** is appropriate. Accordingly, Plaintiff's Application for Attorneys' Fees and Costs [34] is **GRANTED IN PART** and **DENIED IN PART**.

Defendant the Law Office of Tanya Mitchell Graham, P.C. is **ORDERED** to pay Plaintiff Renae Ford **$33,375.00** in attorney's fees.

Finally, the parties reached a settlement of all claims on October 12, 2018, leaving only the issue of attorney's fees unresolved. Dkt. No. [32]. As there are no issues remaining, the Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this _lm_ day of February, 2019.


**Leigh Martin May**
**United States District Judge**

11